IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE ESTATE OF JOE NATHAN JAMES, JR.,)
by and through its personal representative, )
HAKIM JAMES, )
)
     Plaintiff, )
)
v. )   CIVIL ACT. NO. 2:23-cv-293-ECM
)           [WO]
GOVERNOR KAY IVEY, *et al.*, )
)
     Defendants. )

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

On July 28, 2022, the State of Alabama executed Joe Nathan James, Jr. ("Mr. James") by lethal injection, after a jury had convicted and sentenced Mr. James to death.  Mr. James' estate ("Estate" or "Plaintiff"), by and through its personal representative, Hakim James, brings this action pursuant to 42 U.S.C. § 1983 against Governor Kay Ivey ("Ivey"); the Commissioner of the Alabama Department of Corrections ("ADOC"), John Q. Hamm ("Hamm"); Warden Terry Raybon ("Raybon"), Attorney General Steve Marshall ("Marshall"); and John Does 1–6 (collectively, the "Defendants"), asserting that the Defendants' acts and omissions in carrying out Mr. James' execution violated his rights under the United States Constitution, the Alabama Constitution, and Alabama state law.  The Estate seeks monetary damages, attorney's fees, and costs.

Now pending before the Court is the Defendants' motion to dismiss. (Doc. 33).  The motion is fully briefed and ripe for review.  For the reasons explained further below, the

Court finds that the Defendants' motion is due to be granted to the extent that the federal claims are due to be dismissed with prejudice, and the Court will decline to exercise supplemental jurisdiction over the state law claims and dismiss those claims without prejudice.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the Estate's state law claims pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV.  FACTS[1]

Mr. James was executed by lethal injection at Holman Correctional Facility ("Holman") on July 28, 2022.  As set out further below, the Estate alleges that Mr. James' execution lasted approximately three-and-a-half hours, during which time Mr. James allegedly was forcibly sedated and rendered unconscious before he was put to death, punctured with needles numerous times over multiple parts of his body, and received two

---

[1] This recitation of the facts is based on the Estate's complaint. (Doc. 1).  The Court recites only the facts pertinent to resolving the Defendants' motion to dismiss.  For purposes of ruling on the motion, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Estate.  Additionally, the Court accepts as true the factual allegations in the complaint—including the allegations made "on information and belief," which the Court assumes without deciding may be accepted as true.

incisions in his left arm.  At all relevant times, Ivey was the Governor of Alabama, Marshall was the Alabama Attorney General, Hamm was the ADOC Commissioner, and Raybon was the Warden of Holman.  As alleged in the complaint, Defendants John Does 1–3 are members of the "IV Team" who participated in Mr. James' execution, and Defendants John Does 4–6 are members of the "Execution Team" who participated in Mr. James' execution.

Alabama's lethal injection protocol ("Protocol") requires that the IV Team place two IV lines in the condemned individual's veins.  The Protocol further authorizes two methods for the IV Team to establish IV access: "the standard procedure," or, "if the veins are such that intravenous access cannot be provided [redacted] . . . a central line procedure." (Doc. 1 at 10, para. 46) (alterations in original).  Under the Protocol, the IV Team sets the IV lines, while the Warden of Holman administers the lethal injection drugs.  Witnesses in the witness room are unable to observe the IV Team's setting of the IV lines, as the curtains to the execution chamber are kept closed during this time.  Once the IV team has placed the two IV lines, the curtains to the witness room are opened, and the Warden is then required to "read the [death] warrant to the condemned offender" before administering the lethal injection drugs. (*Id.* at 11, paras. 54–55, 57).  The Protocol provides that "[t]he condemned offender will be allowed to make any last remarks" and will be given up to two minutes to speak. (*Id.* at 11, para. 56) (alteration in original).

Mr. James was scheduled to be executed on July 28, 2022, at 6:00 p.m.  The Execution Team strapped Mr. James to the execution gurney shortly after 6:00 p.m., and the IV team attempted to establish IV access to Mr. James' veins.  No witnesses observed

the attempts to establish IV access.  Autopsy reports show that "the IV Team attempted to establish IV access by puncturing Mr. James with a needle several times in multiple areas of his body, including the elbows, wrists, hands, and right foot." (*Id.* at 12, para. 61).[2] Mr. James "sustained multiple abrasions" and two incisions in his left arm as the IV Team attempted to establish IV access. (Doc. 1 at 12, para. 62; at 15, para. 83).  The Estate alleges that the Protocol does not authorize incisions to expose an inmate's vein in order to gain IV access.   The Estate also alleges that during the attempts to gain IV access, the IV Team forcibly administered midazolam as a sedative to Mr. James.  According to the complaint, the Protocol does not allow the IV Team to administer any type of sedative to the condemned individual before the lethal injection drugs are administered.  Additionally, the Estate alleges that ADOC has represented in other litigation before this Court that the use of intramuscular sedation "would be off protocol." (*Id.* at 11, para. 53); (*see also* doc. 32 at 10 in *Smith v. Hamm et al.*, 2:22-cv-497-RAH (M.D. Ala. Nov. 7, 2022)).

The Estate alleges that the IV team was unable to establish the two required IV lines until approximately 9:02 p.m.  Clinical practice guidelines suggest that it "should not take much longer than a few minutes to accomplish IV access" and that "difficult IV access may

---

[2] The Defendants invite the Court to consider an affidavit accompanying the autopsy report conducted by Dr. Boris Datnow, which was filed in separate litigation before this Court and which, according to the Defendants, "discredit[s]" many of the complaint's allegations. (Doc. 33 at 2–3, n.3).  Although the Estate does not mention the affidavit in its response to the motion to dismiss, the Court declines to consider the affidavit because the Court is not persuaded that *the affidavit* is "central to [the Estate's] claims." *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).  Even if it were, the Court could not simply disregard the Estate's factual allegations in the face of conflicting information because at this stage, the Court must accept the complaint's factual allegations as true. *See Bailey*, 843 F.3d at 478 n.3.  In any event, even if the Court did consider the affidavit, it would not change the Court's reasoning or conclusions.

take as long as 30 minutes." (Doc. 1 at 7–8, paras. 33–35).  Additionally, the Estate alleges that despite the IV Team "continuously puncturing Mr. James with needles and failing to establish IV access for more than three hours," Marshall, Ivey, and Hamm failed to call off Mr. James' execution and allowed the execution to continue "well past the point when it became unnecessarily cruel and painful." (*Id.* at 12, para. 66).  The Estate also alleges that the Defendants failed to proceed with implementing a central line procedure in accordance with the Protocol once it became clear that IV access could not be obtained through "the standard procedure."

When the curtains to the execution chamber opened, Mr. James' eyes remained closed, and his body remained immobile on the gurney.  According to the Estate, "Mr. James was unconscious, likely as a result of forcible sedation," when Raybon read the death warrant. (*Id.* at 13, para. 68).  Mr. James had planned, as his final words, to apologize to his family, to apologize to the victim's family, and to say a Muslim prayer. However, when Raybon asked Mr. James if he would like to say any last words, Mr. James did not respond.  The Estate alleges that Raybon and the Execution Team knew that Mr. James was unconscious and unable to say his last words.

Raybon began administering the lethal injection drugs to Mr. James at 9:04 p.m., and the State of Alabama pronounced Mr. James deceased at 9:27 p.m.  ADOC later confirmed that the delayed execution was caused by difficulty in establishing IV access. ADOC refused to confirm that Mr. James was conscious when Raybon began administering the lethal injection drugs.  The Estate further alleges that Alabama "shrouds

its execution procedures in secrecy" and that much of the information related to Mr. James'

execution remains in ADOC's exclusive possession. (*Id.* at 2, para. 2).

## V. DISCUSSION

The Estate's complaint contains four counts. (*See generally* doc. 1).  In Count One,

the Estate asserts that Mr. James' prolonged execution violated his rights under the United

States and Alabama Constitutions.  Count Two asserts that Mr. James' forced sedation

violated his rights under the United States and Alabama Constitutions.  In Count Three, the

Estate claims that deviations from Alabama's execution protocol violated Mr. James' rights

under the United States and Alabama Constitutions.  Finally, Count Four asserts a wrongful

death claim under Alabama law.  All claims are brought against the Defendants in their

individual capacities.

The Defendants move to dismiss the complaint in its entirety.  They argue that the

federal claims did not survive Mr. James' death, and that in any event, those claims are

barred by qualified immunity.  They also argue that monetary relief is not an available

remedy for violations of the Alabama Constitution, that they are entitled to various state

law immunities, and that the complaint fails to state a plausible wrongful death claim.  The

Court will begin by addressing the federal claims.

### A.  Federal Claims

In Count One, the Estate asserts that the three-and-a-half-hour duration and

attendant nature of Mr. James' execution, in particular the multiple attempts to establish

IV access by puncturing him with needles all over his body and making two incisions in

7

his arm, violated Mr. James' Eighth Amendment right to be free from cruel and unusual punishment.  In Count Two, the Estate claims that the forcible sedation of Mr. James prior to the administration of the lethal injection drugs also violated his Eighth Amendment rights.  Count Three asserts that the Defendants' "significant" deviations from Alabama's lethal injection protocol during Mr. James' execution violated his Eighth Amendment rights and his equal protection rights under the Fourteenth Amendment.

Citing ALA. CODE §§ 6-5-410 and 6-5-462, the Defendants argue that the federal claims did not survive Mr. James' death.  They also argue that even if the claims did survive Mr. James' death, the claims are nonetheless due to be dismissed because the Defendants are entitled to qualified immunity.  The Court will assume without deciding that the federal claims survived Mr. James' death.  Because Counts One and Two are interrelated, the Court addresses them together before turning to Count Three.

"[T]he Eighth Amendment does not guarantee a prisoner a painless death . . . ." *Bucklew v. Precythe*, 587 U.S. 119, 132 (2019).  Instead, the relevant Eighth Amendment inquiry is whether the State's chosen method of execution "'superadds' pain well beyond what's needed to effectuate a death sentence." *Id.* at 136–37.  And "[t]o determine whether the State is cruelly superadding pain," the Supreme Court requires "asking whether the State had some other feasible and readily available method to carry out its lawful sentence that would have significantly reduced a substantial risk of pain." *Id.* at 137; *see also Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 858 (11th Cir. 2017) (explaining that a plaintiff asserting an Eighth Amendment method of execution challenge "must plausibly

plead, and ultimately prove, that there is an alternative method of execution that is feasible, readily implemented, and in fact significantly reduces the substantial risk of pain posed by the state's planned method of execution"). The plaintiff must establish that the challenged method poses a "'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citation omitted). Moreover, "[t]he Constitution affords a 'measure of deference to a State's choice of execution procedures' and does not authorize courts to serve as 'boards of inquiry charged with determining "best practices" for executions.'" *Bucklew*, 587 U.S. at 134 (citation omitted).

Additionally, government officials sued in their individual capacities are protected by qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Eleventh Circuit has established a two-part analysis to determine whether a defendant is entitled to qualified immunity. First, the defendant must show that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (quoting *Harlow*, 457 U.S. at 818). The Eleventh Circuit also describes this step as requiring a showing that the defendant was "acting within his discretionary authority." *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

Second, if the court concludes the defendant was engaged in a discretionary function, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Holloman*, 370 F.3d at 1264.  To do so, the plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.*  The Court may analyze these two prongs "in whatever order is deemed most appropriate for the case." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

The Estate does not dispute that the Defendants were acting within the scope of their discretionary authority. (Doc. 41 at 19 n.9).  Consequently, the Court will turn to whether the Estate can show that the Defendants violated Mr. James' clearly established constitutional rights.

The Estate may show that the right at issue was clearly established for qualified immunity purposes in three ways: it can point to (1) case law with indistinguishable facts, (2) "a broad statement of principle within the Constitution, statute, or case law"; or (3) "conduct so egregious that a constitutional right was clearly violated," even in the absence of case law. *See Baxter v. Roberts*, 54 F.4th 1241, 1267 (11th Cir. 2022) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)).  Whatever the Estate's method, "existing precedent must have placed the . . . constitutional question beyond debate." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Put another way, the Estate must show that "[t]he contours of the right [are] sufficiently clear that a reasonable

10

official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

The Estate does not identify any case law with indistinguishable facts clearly establishing Mr. James' constitutional rights. Indeed, the Estate cites no decision from the Supreme Court or the Eleventh Circuit holding that officials' acts or omissions in carrying out a particular execution violated the Eighth Amendment, and the Court's independent research found none. Thus, to overcome the Defendants' assertion of qualified immunity, the Estate must show that the law was clearly established through either a broad statement of principle or conduct so egregious that the violation of Mr. James' rights was obvious. *See Baxter*, 54 F.4th at 1267. "[I]t is very difficult to demonstrate" a violation of clearly established law in either of these ways. *Corbitt*, 929 F.3d at 1315.

### 1. Counts One and Two

The Court begins with the Estate's claims in Counts One and Two that the circumstances of Mr. James' execution as alleged in the complaint—the duration, multiple attempts to establish IV access through needle punctures and incisions, and forcible sedation—violated his clearly established Eighth Amendment right to be free from cruel and unusual punishment. Construing the factual allegations and all reasonable inferences in the Estate's favor, Count One challenges not just the prolonged nature of the execution but also what Mr. James allegedly experienced during that time, including being punctured with needles multiple times and enduring two incisions in his left arm in attempts to expose a vein to gain IV access. The Court will also assume for argument's sake that the Estate

sufficiently alleges that Mr. James was forcibly sedated before the lethal injection drugs were administered and that he was unconscious when Raybon read the death warrant. Thus, the question before the Court is whether reasonable officials in the Defendants' position would know that the duration and circumstances of Mr. James' execution, as alleged by the Estate, were unlawful in light of clearly established law.

The Estate relies on *Bucklew*'s statement that the Eighth Amendment forbids "forms of punishment that intensif[y] the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace.'" *Bucklew*, 587 U.S. at 131 (parenthetical in original) (second alteration in original) (quoting *Baze v. Rees*, 553 U.S. 35, 48 (2008) (plurality op.)). According to the Estate, this principle, coupled with the "particularly egregious" facts alleged in the complaint, put the Defendants on notice that the prolonged nature of Mr. James' execution violated the Eighth Amendment. (Doc. 41 at 20).  The Estate contends that the allegation that it took "hours" to establish IV access for Mr. James is sufficiently egregious to put the Defendants on notice that their conduct violated Mr. James' rights. (*Id.*).  But the relevant Eighth Amendment question is not "how long it [took] for [Mr. James] to die, but how long he [was] capable of feeling pain." *See Bucklew*, 587 U.S. at 147.  The Court acknowledges that, because he is deceased, Mr. James cannot testify as to the amount or duration of pain he may have experienced during his execution.  But assuming for argument's sake that Mr. James experienced severe pain during the prolonged execution due to the numerous needle punctures and two incisions in his arm, the Estate still must show that it was clearly established, in July 2022, that the Defendants subjected

him to "'superadd[ed]' pain well beyond what[] [was] needed to effectuate [the] death sentence." *See id.* at 137.

In a factually similar, though not identical, case, another judge in this district concluded that Kenneth Smith's Eighth Amendment claim arising out of a failed execution attempt—in which Mr. Smith alleged that he was painfully strapped to the execution gurney for four hours; repeatedly stabbed with needles for one to two hours, including in his muscles and one instance in which the "biggest needle he had ever seen" was plunged into his collarbone in an attempt to establish a central line IV; all of which caused him severe physical and psychological pain during and after the execution attempt—was barred by qualified immunity because it was not clearly established that the defendants' conduct violated the Constitution. *Smith v. Hamm*, 2023 WL 4353143, at *7, *11 (M.D. Ala. July 5, 2023). The court reasoned that Mr. Smith's pain allegedly "was caused by the officials' use of needles to establish IV access, use of the straps, and positioning of Smith on the execution gurney, which are customary (and arguably necessary) instruments for carrying out a lethal injection execution, which time and again has been upheld as a constitutional method of execution in Alabama and nationwide." *Id.* at *11 (parenthetical in original). Additionally, the court concluded that "it was not clearly established in November 2022 that the duration of the attempted execution violated Smith's constitutional rights." *Id.*

This Court finds *Smith*'s analysis persuasive and further finds that, on this record, the Estate has failed to show that the prolonged nature of Mr. James' execution violated his clearly established constitutional rights. The Estate cites the Supreme Court's

13

statements in *Baze* observing that Kentucky's lethal injection protocol afforded the IV team "one hour to establish both the primary and backup IVs, a length of time the trial court found to be 'not excessive but rather necessary.'" *Baze*, 553 U.S. at 55.  Like the *Smith* court, this Court finds *Baze*'s statements insufficient to place "beyond debate" the question of whether Mr. James' three-and-a-half-hour execution violated his constitutional rights. *See Smith*, 2023 WL 4353143, at *11 (quoting *Ashcroft*, 563 U.S. at 741).  Additionally, to the extent that the Estate's claims rest on the IV Team's inability to establish IV access within the timeframe adhered to by medical professionals, the Supreme Court has indicated that, for purposes of the Eighth Amendment, executions are not governed by the same standards as medical procedures. *See Baze*, 553 U.S. at 59–60 (rejecting as not "pertinent" the fact that the use of certain supplementary procedures "is the standard of care in surgery requiring anesthesia" because the petitioners did not show that these procedures, "drawn from a different context, are necessary to avoid a substantial risk of suffering" during an execution); *Smith*, 2023 WL 4353143, at *11 (making a similar observation).

Moreover, as in *Smith*, using needles to establish IV access on Mr. James was a customary and arguably necessary aspect of a lethal injection execution. *See Smith*, 2023 WL 4353143, at *11.  Thus, the Defendants' alleged conduct in this regard did not "differ[] in nature from that of a standard execution by lethal injection—even if the conduct alleged differed in degree." *See id.*  All of these circumstances undermine the Estate's assertions that a reasonable official would have understood that what he or she was doing violated Mr. James' Eighth Amendment rights. *See Anderson*, 483 U.S. at 640.

14

Moreover, accepting as true the Estate's allegations that two incisions were made in Mr. James' left arm in an attempt to gain IV access, this conduct, either alone or in combination with the execution's duration and multiple needle punctures, does not demonstrate that the Mr. James' clearly established rights were violated.  The Estate must show that the Defendants subjected Mr. James to superadded pain "*well beyond* what[] [was] needed to effectuate [the] death sentence." *See Bucklew*, 587 U.S. at 137 (emphasis added).  Here, the Estate itself alleges that the incisions on Mr. James' left arm, like the multiple needle punctures, are "evidence of an attempt . . . to establish IV access." (Doc. 1 at 15, para. 84).  And again, establishing IV access is a customary and arguably necessary part of a lethal injection execution.  The Court does not suggest that any and all attempts to establish IV access would be constitutionally permissible under clearly established law.  Here, however, the Estate has failed to show that, in July 2022, it was clearly established that the Defendants' alleged conduct subjected Mr. James to superadded pain "well beyond what[] [was] needed to effectuate [the] death sentence." *See Bucklew*, 587 U.S. at 137.

The Court further finds that the alleged forcible sedation of Mr. James, considered separately or together with the Estate's other allegations, is insufficient to demonstrate that the Defendants violated clearly established law.  The Estate does not cite any Supreme Court or Eleventh Circuit decisions holding that forcibly sedating the condemned before his or her execution violates the Constitution, and the Court's independent research revealed none.  The Estate contends that *Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986), a case involving a mentally ill inmate, provided sufficient notice to the Defendants that

15

forcibly sedating Mr. James would violate his constitutional rights. (Doc. 41 at 25).  In *Ford*, the Supreme Court held that the Constitution "prohibits a State from carrying out a sentence of death upon a prisoner who is insane." 477 U.S. at 410.  The Court further explained that our history has longed questioned "the retributive value of executing a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life," and that civilized societies feel "abhorrence" at killing "one who has no capacity to come to grips with his own conscience or deity." *Id.* at 409.  In its complaint, the Estate also cites Supreme Court decisions analyzing the constitutionality of executing a person suffering from a mental illness, *see, e.g.*, *Panetti v. Quarterman*, 551 U.S. 930, 954–59 (2007), and forcible medication of a mentally ill prisoner outside the execution context, *see, e.g.*, *Washington v. Harper*, 494 U.S. 210, 229 (1990).

This Court concludes that the principles espoused in these cases are insufficient to have made "[t]he contours of the [Eighth Amendment] right" at issue "sufficiently clear" such that reasonable officials would have understood that their alleged conduct in the factual circumstances alleged here—forcibly sedating an inmate before reading the death warrant—violated that right. *See Anderson*, 483 U.S. at 640.  "[O]fficials are not obligated to be creative or imaginative in drawing analogies from previously decided cases," and "[a] reasonable official's awareness of the existence of an abstract right . . . does not equate to knowledge that *his* conduct infringes the right." *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011) (third alteration in original) (emphasis in original) (citations omitted).

This Court does not suggest that "anything goes" in the execution chamber.  There may be circumstances in which officials' conduct in carrying out an execution is so egregious that it violates clearly established law.  "But given the high bar" for showing a violation of a clearly established constitutional right and "the deference the Supreme Court has afforded states in carrying out executions," this Court is not persuaded that reasonable officials would have known, in July 2022, that the acts or omissions which allegedly occurred during Mr. James' execution violated his Eighth Amendment right to be free from cruel and unusual punishment. *See Smith*, 2023 WL 4353143, at \*11; *cf. Bucklew*, 587 U.S. at 134.  Consequently, the Defendants' motion to dismiss is due to be granted as to the federal claims asserted in Counts One and Two.

### 2.  Count Three

In Count Three, the Estate claims that the Defendants' significant deviations from Alabama's lethal injection protocol violated Mr. James' Eighth and Fourteenth Amendment rights.  The deviations about which the Estate complains include: (1) the forcible sedation of Mr. James, which the Estate says deprived him of the opportunity to hear the reading of the death warrant and to speak his last words; (2) the failure to perform a consciousness check prior to administering the lethal injection drugs; and (3) the failure to proceed to a central line procedure when it became clear that the Defendants would not be able to establish IV access through the standard procedure.  Because the Estate fails to show that the alleged deviations from the lethal injection protocol violated clearly established law, Count Three is also due to be dismissed.

"Significant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment." *Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012) (per curiam).  In *Arthur*, the Eleventh Circuit concluded that the plaintiff sufficient alleged "a plausible Equal Protection claim because he allege[d] that Alabama has substantially deviated from its execution protocol in a manner that significantly reduces inmate safeguards." *Id.*  The plaintiff alleged that during a recent execution, Alabama failed to perform a consciousness check required by its lethal injection protocol. *Id.*  The court further explained that "[t]he consciousness check is performed to reduce or eliminate the risk of excruciating pain that would follow the injection of the second and third drugs in the lethal injection protocol." *Id.*  The court reasoned that, based on the plaintiff's allegation that "Alabama failed to perform a required consciousness check in a recent execution, a significant deviation from its execution protocol," combined with his "other allegations regarding the veil of secrecy that surrounds Alabama's execution protocol," it was "certainly not speculative and indeed plausible that Alabama will disparately treat [the plaintiff] because the protocol is not certain and could be unexpectedly changed for his execution." *Id.*

Here, the Estate does not allege or argue that the failure to perform a consciousness check on Mr. James or the failure to proceed to a central line procedure exposed him to a substantial risk of suffering or otherwise constituted cruel and unusual punishment under clearly established law. *See Bucklew*, 587 U.S. at 137.  Moreover, for substantially the same reasons stated above in Section V.A.1., the Estate's allegation that Mr. James'

forcible sedation was a significant deviation from the execution protocol is insufficient to show that the Defendants' conduct violated Mr. James' clearly established Eighth Amendment rights.

To the extent the Estate contends that the alleged deviations from the protocol violated Mr. James' equal protection rights independently of whether the deviations "significantly reduce[d] inmate safeguards," *see Arthur*, 674 F.3d at 1263, this argument is unavailing. Although *Arthur* ultimately held that the plaintiff stated a plausible *equal protection* claim, *id.*, the Eighth Amendment's prohibition on cruel and unusual punishment factored into the court's analysis, in particular its statement that "[s]ignificant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment," *see id.* At the very least, a reasonable official could have believed, in July 2022, that a finding that significant deviations from an execution protocol violate the Equal Protection Clause also requires a finding that those deviations "significantly reduce[] inmate safeguards." *See id.* Thus, to the extent the Estate contends that the alleged deviations from the protocol, such as the deprivation of Mr. James' opportunity to speak his last words, independently violated Mr. James' equal protection rights, the Court finds that on this record, the Estate fails to show that the alleged deviations violated clearly established law. Consequently, the Court concludes that the Defendants' motion to dismiss is due to be granted as to the federal claims asserted in Count Three.

Because the Court concludes that the Estate has failed to establish a violation of Mr. James' clearly established constitutional rights, the Court need not, and does not,

"reach the other qualified immunity question of whether a constitutional violation occurred in the first place." *See Corbitt*, 929 F.3d at 1323.

### B.  State Law Claims

In addition to bringing federal claims pursuant to § 1983, the Estate brings claims against all Defendants for alleged violations of the Alabama Constitution and an Alabama law wrongful death claim.   Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the Estate's state law claims.

Where all federal claims are dismissed prior to trial, district courts are encouraged to dismiss any remaining state law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004).   Before doing so, the Court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015).   "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002).   "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540 (parenthetical in original).   Here, there are numerous state law issues raised, including state immunity issues, all of which are best resolved by the state courts.   Further, there is nothing before the Court to suggest that the remaining factors—convenience and fairness—weigh in favor of retaining jurisdiction over the claims arising under state law.   Moreover, the Court can discern no significant prejudice to any party, particularly considering § 1367(d)'s provision tolling the statute of limitations

20

on the state law claims.   Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims in this action pursuant to § 1367(c)(3), and those claims are due to be dismissed without prejudice. *See Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (explaining that when a court declines to exercise supplemental jurisdiction over state law claims in a case originally filed in federal court, the state law claims "should be dismissed without prejudice so that the claims may be refiled in the appropriate state court").

## VI.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED as follows:

1.      The Defendants' motion to dismiss (doc. 33) is GRANTED as follows:

    a.  Judgment is entered against the Plaintiff and in favor of the Defendants on the federal claims;

    b.  The Court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and the state law claims are DISMISSED without prejudice;

2.      This case is DISMISSED.

A separate Final Judgment will be entered.

DONE this 26th day of March, 2024.

          /s/ Emily C. Marks
          EMILY C. MARKS
          CHIEF UNITED STATES DISTRICT JUDGE